United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA AND OMEGA SEMICONDUCTOR LIMITED, et al.,<br>Plaintiffs,<br>v.<br>FORCE MOS TECHNOLOGY CO., LTD., et al.,<br>Defendants. | Case No. 22-cv-05448-PCP<br><br>**OMNIBUS ORDER ON PENDING MOTIONS**<br><br>Re: Dkt. Nos. 146, 154, 156, 158, 160, 161, 162, 163, 164, 165, 171, 177, 178, 181, 183, 186, 188, 192, 194, 196 |

This case involves a set of patents related to metal oxide semiconductor field effect transistors, or MOSFETs. Now before the Court are several motions. For the reasons stated herein, the Court grants Force MOS Technology Co., Ltd.'s motion to realign the parties for trial; denies Alpha and Omega Semiconductor Limited's (AOS) motion to strike and exclude the testimony of Dean Neikirk, Ph.D.; grants in part and denies in part Force MOS's motions to strike and exclude the testimony of Gareth Macartney, Ph.D., and John Berg; and grants in part and denies in part the parties' sealing requests.

## I. Motion to Realign the Parties

In a run-of-the-mill patent case, a patentee sues an alleged infringer, and the patentee is therefore the plaintiff. But where a patentee alleges infringement without filing suit, the accused party may in some instances initiate a declaratory action to clarify its legal rights. *See Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). In that instance, the alleged infringer is the plaintiff instead of the patentee. This is one of those cases: After Force MOS accused AOS's product of infringing the asserted patents, AOS filed suit seeking a declaration that its products do not infringe and that the asserted patents are invalid. And with AOS's plaintiff status comes the presumptive ability to proceed first at trial. *Fresenius Med. Care*

*Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-CV-01431, 2006 WL 1646110, at *1 (N.D. Cal. June 12, 2006). Because Force MOS wants to proceed first at trial, it now moves to realign the parties so that it will be named plaintiff and current plaintiff AOS and third-party defendant Jireh Semiconductor, Inc. will be named defendants.

As all parties appear to recognize, "[r]ealignment of the parties is within the Court's discretion." *MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 916 (N.D. Cal. 2010) (first citing *Fresenius,* 2006 WL 1646110, at *1; and then citing *Plumtree Software, Inc. v. Datamize*, No. 02-CV-5693, 2003 WL 25841157, at *5 (N.D. Cal. Oct. 6, 2003)). The Court exercises that discretion to realign the parties for two reasons.

First, the Court's priority at trial is to ensure the clearest possible presentation of the issues in this case to the jury. "[R]ealignment will make the burdens and the evidence in a factually complex case simpler for the jury to follow. It will be easier for a jury to understand this as an infringement case with an invalidity defense than as an invalidity case with infringement counterclaims." *BioNTech SE v. CureVac SE*, No. 2:23-CV-222, 2025 WL 77391, at *2 (E.D. Va. Jan. 10, 2025). For that reason, both the Federal Judicial Center and the former Chief Judge of the Federal Circuit have suggested that patentees should proceed first at trial, even in declaratory actions initiated by alleged infringers. *See* Patent Case Management Judicial Guide (3d Ed.) at § 8.1.2.2.2.1 p. 8-14, *available at* https://www.fjc.gov/content/321534/patent-case-management-judicial-guide-third-edition; Howard T. Markey, *On Simplifying Patent Trials*, 116 F.R.D. 369, 373 n.7, 378 (1987).

Second, because AOS no longer asserts any affirmative infringement claims against Force MOS, the "primary purpose" of this litigation is to adjudicate Force MOS's infringement claims, and Force MOS is the "natural plaintiff" as the party that bears the burden of proof on those claims at trial. *Plumtree*, 2003 WL 25841157, at * 3–4. That AOS bears the burden of proof on its invalidity and unenforceability claims—which are typically asserted as defenses to infringement, *see* 35 U.S.C. § 282, and would likely be mooted by a finding of noninfringement, *see Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1345–46 (Fed. Cir. 2007)—does not alter the analysis, *see Plumtree*, 2003 WL 25841157, at *3.



United States District Court
Northern District of California

Accordingly, Force MOS's motion to realign the parties is granted. Force MOS shall be named as plaintiff; AOS and Jireh Semiconductor, Inc. shall be named as defendants.

## II. *Daubert* Motions

AOS moves to strike and exclude the testimony of Force MOS's technical expert, Dean Neikirk, Ph.D. Force MOS likewise moves to strike and exclude the testimony of AOS's technical expert, John Berg, and damages expert, Gareth Macartney, Ph.D.

Courts act as gatekeepers of expert testimony to ensure that such testimony is reliable and relevant under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Under Rule 702, expert testimony is permitted as long as "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.* This inquiry "a flexible one," and "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596). Courts should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

### A. AOS's motion to exclude Dr. Neikirk's testimony is denied.

AOS moves to exclude the testimony of Force MOS's technical expert Dr. Neikirk regarding (1) certain Scanning Electron Microscopy (SEM) images of the accused products on which Dr. Neikirk's infringement opinion relied, (2) whether, for purposes of 35 U.S.C. § 271(f)(1), wafers produced for AOS by Jireh in the United States constitute "a substantial portion" of patented inventions in which they are used abroad; and (3) whether those same wafers have any substantial noninfringing uses for purposes of 35 U.S.C. § 271(f)(2). The motion is denied.

#### 1. SEM Images

As part of his infringement analysis, Dr. Neikirk relied on testing of the accused products

performed by two independent labs: Material Science Service and Microtech. Both labs produced SEM images of the accused products, which Dr. Neikirk then used to discern the products' internal structures and their relative positions to one another. To produce those images, the labs used "junction staining," a technique in which cross-sections of the products were immersed in a chemical bath that etches differently doped silicon regions within the product at different rates, revealing the different silicon structures, which the SEM images then captured.

AOS asks the Court to exclude Dr. Neikirk's opinions relying on the SEM images for four primary reasons. None justify exclusion.

First, AOS argues that Dr. Neikirk is unqualified to provide expert testimony interpreting the SEM images because he is not qualified to perform junction staining. Even if it were true that Dr. Neikirk lacks experience performing junction staining, which Force MOS contests, he clearly has substantial experience interpreting images of semiconductors' internal structures. *See* Dkt. No. 179-20 ¶¶ 8–10; 179-21 ¶¶ 9–18 (describing qualifications, including Ph.D. and later academic work using and interpreting imaging arrays of semiconductors). That is precisely what he does in his expert report. And though AOS argues that he lacks experience identifying the particular structures at issue here ("lateral contact layers"), AOS does not explain why Dr. Neikirk's experience would not enable him to identify those structures.

Second, AOS argues that MSS and Microtech "failed to control three critical variables": temperature, etch ratios (i.e., the composition of the chemical bath), and "calibration." As to temperature, both labs reported using "room temperature," which Dr. Neikirk opined is standard protocol. *See* Dkt. No. 179-20 ¶ 18. Similarly, for etch ratios, Dr. Neikirk explained that "it is entirely normal to use different solution mixes and different etch timings as needed to achieve a qualitatively useful result (i.e.[,] adequate contrast to identify the differently doped regions without so over etching as to obfuscate the structures)." *Id.* ¶ 20. That is because "any given sample being tested will respond somewhat differently to different solutions." *Id.* And as to calibration, AOS suggests that Dr. Neikirk should have required MSS and Microtech to use the exact same parameters when staining and imaging the accused products, but it fails to explain why Dr. Neikirk's reliance on two independent sets of tests using different parameters is unreliable. As

United States District Court
Northern District of California

Force MOS concedes, that might be the case if Dr. Neikirk were using the tests to provide precise calculations of the sizes of various structures within the accused products. But he did not do so: Dr. Neikirk used the images only to determine the relative locations of internal structures without regard for their precise dimensions. Nothing in the record suggests that differently calibrated tests (or the use of different etch ratios or temperatures) would meaningfully alter the relative positions of such internal structures. If anything, the consistency of the results from differently calibrated tests might engender greater confidence in those results.

Third, AOS suggests that Dr. Neikirk "cherry-picked" which of the hundreds of SEM images to include in his report as support for his infringement opinion. As Force MOS explains, however, it would not have been feasible to include each of the hundreds of SEM images in his report, and Dr. Neikirk expressly confirmed that he analyzed every image. *See* Dkt. No. 179-20 ¶ 25; Dkt. No. 179-24 ¶¶ 39, 62. AOS insists that Dr. Neikirk left out images that contradict his conclusions, based on the view of AOS's expert that certain of the SEM images demonstrate *non*infringement. But Dr. Neikirk opined that all the images are of a piece with his conclusion, and to the extent AOS disagrees with his interpretation of certain images not in his report, that is best addressed through cross-examination and the presentation of contrary evidence at trial. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

Fourth, AOS argues that Dr. Neikirk's opinion is unreliable because his report failed to disclose the exact parameters (i.e., etch times) for each SEM image. Yet Force MOS asserts, and AOS does not dispute in its reply, that Force MOS provided such data to AOS by email before opening expert reports were served. *See* Dkt. 179-7. AOS insists that Dr. Neikirk needed to include such data in his report to show that he "took the variations in etch protocol into account in deciding which images to rely upon and how to totally or partially rely on them." AOS argues that his failure to do so violated Rule 26's command for experts to include "the basis and reasons" for "all opinions the [expert] witness will express." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). But Dr. Neikirk did not include such data in his report because he did find it important or factor it into his analysis. As already mentioned, Dr. Neikirk's view is that the exact etch solution and time used are not determinative of the quality of an image because they must necessarily differ among samples due

to samples' differing reactions to the same solution.

Because Nr. Neikirk's opinion based on the SEM images is likely to help the jury, is based on sufficient facts, and is sufficiently reliable, the Court denies AOS's request to exclude that opinion.

**2. Section 271(f)(1)**

AOS also asks the Court to exclude Dr. Neikirk's opinion that the AOS wafer made by Jireh in the United States is, alone, "a substantial portion of the components of a patented invention" in which the wafer is incorporated overseas, as required to find indirect infringement under 35 U.S.C. § 271(f)(1). AOS argues that Dr. Neikirk "undertook no quantitative analysis to back … up" his conclusion "and instead relied on a qualitative contention relating to [the] relative importance of the wafer component." In AOS's view, that contravenes the Supreme Court's instruction in *Life Technologies Corp. v. Promega Corp.* that (1) the substantiality analysis under § 271(f)(1) is quantitative, not qualitative, and (2) a single component therefore cannot be "substantial." *See* 580 U.S. 140, 146–49 (2017).

Contrary to AOS's assertion, Dr. Neikirk conducted the required quantitative analysis. Dr. Neikirk opined that that the wafer and dies produced by Jireh in the United States "contain the structures recited in [all but one] limitation" of each asserted patent. *See* Dkt. No. 179-21 ¶¶ 477–478. In other words, Dr. Neikirk opined that the wafer and dies are a quantitatively substantial portion of the patented inventions in which they are incorporated overseas because the wafer and dies contain the vast majority of the claimed structures necessary for those inventions.

AOS contends that Dr. Neikirk's analysis was deficient because he conflated "components," which must be "physical embodiments," with claims, which are merely concepts that may lack embodiment. *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 449 (2007). Dr. Neikirk's report suggests otherwise: Rather than "counting claim limitations and calling them 'components,'" as AOS contends, he concluded that the wafer and dies "contain the *structures* recited in [each] limitation[]." *See* Dkt. No. 179-21 ¶¶ 477, 479 (emphasis added). The focus on "structures" reflects an analysis of the physical embodiments combined in the wafer and dies, not merely the satisfaction of certain claim limitations.

United States District Court
Northern District of California

AOS also asserts that the wafer is a single component and, as a result, cannot alone qualify as a "substantial portion" of any patented invention. While AOS is free to argue as much at trial, it is far from clear that the wafer is one component rather than a combination of several components—as Dr. Neikirk explained, it contains multiple "structures." And the text of § 271(f)(1) contemplates that an infringer may combine multiple components in the United States before exporting them for further combination with other components abroad. *See* 35 U.S.C. § 271(f)(1) (requiring only that "a substantial portion of the components of a patented invention" be "uncombined *in whole or in part*" prior to export).

For these reasons, AOS's request to exclude Dr. Neikirk's opinion as to substantiality under § 271(f)(1) is denied.

**3. Section 271(f)(2)**

Finally, AOS asks the Court to exclude Dr. Neikirk's opinion that the AOS wafer produced by Jireh in the United States is "especially made or especially adapted for use in the [patented] invention and not a staple article or commodity of commerce suitable for substantial noninfringing use," as required to find indirect infringement under 35 U.S.C. § 271(f)(2). AOS argues that "to opine that [the wafer] is 'especially adapted,'" Dr. Neikirk was required (and failed) to "conduct an analysis to determine whether it has any substantial noninfringing uses." As support for its argument, AOS points to Dr. Neikirk's statement in his deposition that he "did not do a separate investigation" of whether the AOS wafer is used in non-accused AOS products. *See* Dkt. No. 161-3 at 97.

While Dr. Neikirk did not specifically investigate whether AOS uses the wafers in non-accused products, that is in large part because AOS failed to disclose any allegedly substantial noninfringing uses for the wafer in response to interrogatories specifically asking for the facts underlying AOS's position that its products do not infringe under § 271(f)(2). *See* Dkt. No. 179-15 at 9–12 ; Dkt. No. 179-16 at 12. It is difficult to imagine how Dr. Neikirk could have investigated AOS's use of the wafer in non-accused products absent such a disclosure. In any event, Dr. Neikirk provided ample circumstantial evidence to support his conclusion, noting that "AOS's wafer and dies are proprietary and designed to be incorporated into specific packaged devices

during manufacturing," making it unlikely that the wafers could be substituted into other (i.e., non-accused) products. *See* Dkt. No. 179-21 ¶ 481. Force MOS may rely on such circumstantial evidence to establish AOS's infringement, *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012), and an expert like Dr. Neikirk may also rely on such circumstantial to support his conclusions, *see Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1028 (9th Cir. 2022).

Accordingly, Dr. Neikirk's conclusion as to the § 271(f)(2) analysis is sufficiently reliable and helpful, and the Court denies AOS's request to exclude it.

**B. Force MOS's motion to exclude Mr. Berg's testimony is granted in part.**

Force MOS moves to strike and exclude the testimony of AOS's technical expert John Berg on several grounds. The motion is granted in part and denied in part.

**1. Damages Opinions**

**a. Licensing and Royalties.**

Force MOS asks the Court to exclude Mr. Berg's opinion on licensing and a reasonable royalty rate on the basis that Mr. Berg is not qualified to give such an opinion. The Court agrees: None of the three bases AOS offers for qualifying Mr. Berg as an expert on licensing pass muster. *See Bourjaily v. United States*, 483 U.S. 171, 172 (1987) (holding that the party seeking to admit expert testimony bears the burden of demonstrating the expert's qualification).

First, AOS points to Mr. Berg's decades of experience working in the semiconductor industry as establishing his expertise. But "[e]xpertise in one subject does not necessarily mean the expert will be qualified to testify on all issues that could arise from that subject." *Snyder v. Bank of Am., N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) (quoting *Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1241 (D. Utah 2013)). Mr. Berg's general experience in the semiconductor industry does not necessarily qualify him to opine on a hypothetical licensing negotiation and reasonable royalty rate. *Cf. Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL 5483606, at *10 (N.D. Cal. Oct. 22, 2024) ("[E]xpertise in an industry, without more, does not qualify a witness to testify about valuation methodology." (citation modified)).

Second, AOS argues that Mr. Berg is qualified based on his "direct involvement in patent infringement cases and royalty payments at Standard Microsystems." But as Force MOS explains, Mr. Berg last worked at Standard Microsystems in 1990, roughly 20 years before the date of the hypothetical licensing negotiation in this case. *See Penor v. Columbia Cnty.*, No. CV 08-1114-HU, 2010 WL 916211, at *2 (D. Or. Mar. 9, 2010) ("An expert may be properly excluded if his experience or education in the field is outdated."); *see also Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. 1993); *Richmond Steel, Inc. v. Puerto Rico Am. Ins. Co.*, 954 F.2d 19, 22 (1st Cir. 1992). In any case, there is no real evidence that Mr. Berg's work at Standard Microsystems involved licensing or patent valuation—his CV merely states that he "work[ed] with the CEO on patent infringement cases and royalty payment," and in his deposition he offered only general statements that he "ha[s] a lot of experience in … licensing agreements" without providing any detail as to the nature of that experience.

Third, AOS suggests that Mr. Berg's academic degrees necessarily qualify him, as "[l]icensing is squarely something that a long-time technical and industry expert with an … engineering degree and a Master's degree in Management … would know in sufficient detail to offer supporting testimony." Neither AOS nor Mr. Berg have explained how his degrees equip him to opine on licensing, patent valuations, or royalty rates—they do not, for example, state that Mr. Berg ever studied or worked on such issues as part of his degrees. Without more, the bare fact of these degrees do not qualify Mr. Berg as an expert on such subjects. *Cf. Brown v. China Integrated Energy Inc.*, No. 11-CV-02559, 2014 WL 12576643, at *5 (C.D. Cal. Aug. 4, 2014) ("[A]n MBA and significant experience as an expert witness in the past is insufficient to qualify as an expert witness now.").

For these reasons, AOS has not established that Mr. Berg is unqualified to opine on damages issues. The Court therefore grants Force MOS's request to exclude his opinions on a reasonable royalty rate and the relative costs of the patented inventions and alternatives.[1]

[1] The Court therefore need not reach Force MOS's alternative argument that Mr. Berg's opinion as to a reasonably royalty is unreliable *ipse dixit*. But the Court notes for the parties' benefit that the Court agrees and, were Mr. Berg qualified, would exclude his reasonable-royalty opinion on that basis.

**b. Noninfringing Alternatives**

Force MOS does not argue that Mr. Berg is unqualified to opine on the existence and relative cost of noninfringing alternatives (NIAs). But Force MOS contends that his opinions on those issues are unreliable because they lack a sufficient factual or methodological basis. The Court agrees for two reasons. First, whether other technologies constitute NIAs that might reduce the royalty rate to which AOS would agree in a hypothetical negotiation turns on whether such technologies were acceptable substitutes for the patented inventions and available to AOS during the period of alleged infringement. *See Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, No. 03-CV-01431, 2006 WL 1646113, at *1 (N.D. Cal. June 12, 2006). Yet Mr. Berg's report opines on the existence of NIAs without ever analyzing the availability of the proposed NIAs or meaningfully explaining why they would be acceptable substitutes. *See* Dkt. No. 165-3 ¶¶ 53, 69–71, 84. Second, Mr. Berg makes assumptions about how changes in the NIAs would affect their relative cost without any apparent factual basis or explanation. *See id.* ¶¶ 53, 71. AOS suggests that Mr. Berg's specialized knowledge and industry experience supply a basis for these conclusions, but even an expert with specialized knowledge must rely on reasonable (and discernible) methods, including using the required analytical framework. *See United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (explaining that experts who opine based on personal knowledge or experience must show that their "experience supports the[ir] conclusions" and may be excluded if their "reasoning is … speculative" or not "adequately explained"). Accordingly, the Court grants Force MOS's request to exclude Mr. Berg's opinions on the existence and relative costs of NIAs.

**c. Reliance on Past Agreements**

Force MOS asks the Court to exclude Mr. Berg reliance on four of AOS's prior patent-licensing or -acquisition agreements to opine on the value of the asserted patents. This request is also granted. As discussed in greater detail below with respect to AOS's damages expert, the Federal Circuit has held that an expert may not rely on prior licenses that are not comparable to the hypothetical license as support for a proposed royalty rate. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d

United States District Court
Northern District of California

1301, 1324–25 (Fed. Cir. 2009); *see also Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1385 (Fed. Cir. 2025) (reversing based on improper expert testimony using “highly prejudicial … large settlement figure” offered by an expert as “informative” where the expert opined that the settlement was not “sufficiently comparable to the hypothetical license for use as a *direct indication* of a reasonable royalty rate”). Yet Mr. Berg discusses four agreements for which he offers no comparability analysis, two of which AOS’s damages expert has expressly stated are not comparable.

AOS’s arguments for allowing such testimony fail. AOS contends that comparability is a matter of degree. Even so, Mr. Berg has not suggested that these four agreements are comparable *at all*. AOS also argues that allowing Force MOS to discuss the agreements while precluding Mr. Berg from doing so would cause prejudice. But nothing in the record suggests that Force MOS or its damages expert will rely on these four agreements as comparable for reasonable-royalty purposes. To the contrary, Force MOS’s expert opined only that two *other* AOS agreements were relevant to his royalty analysis and has not moved to exclude Mr. Berg’s opinions as to those agreements, so there is no apparent likelihood of prejudice.

The Court therefore strikes and excludes Mr. Berg’s testimony as to the past agreements.

### 2. Noninfringement and Invalidity Opinions

#### a. Mr. Berg is precluded from comparing the accused products to the prior art as part of a noninfringement analysis.

The Federal Circuit has made clear that it is improper to argue noninfringement by comparing accused products to the prior art, as prior art comes into play only as part of the invalidity inquiry. *See 01 Communique Lab’y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 741 (Fed. Cir. 2018); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). Yet Mr. Berg’s report repeatedly compared the accused products to the prior art as part of his noninfringement analysis. *See* Dkt. No. 165-3 ¶¶ 40, 103–106, 112, 114, 117, 119–120, 153–54, 162. AOS argues that Mr. Berg discussed the prior art not to show noninfringement but instead to discredit Dr. Neikirk for changing the scope of the claims in his infringement and invalidity analyses. That is, of course, a permissible argument for Mr. Berg to make, but it is properly raised

in arguing invalidity, not nonfringement. *See 01 Communique*, 889 F.3d at 742–43; *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1367 (Fed. Cir. 2002). For that reason, the Court grants Force MOS's request to exclude Mr. Berg's testimony comparing the accused products to the prior art as part of his non-infringement analysis.

**b. Mr. Berg's noninfringement opinion as the '058 patent is no longer relevant.**

Given the Court's determination at summary judgment that the accused products do not infringe the '058 patent, *see* Dkt. No. 205, at 4–7, Mr. Berg's testimony as to noninfringement of that patent is no longer relevant. The Court excludes the testimony on that basis.

**c. The Court denies Force MOS's request to exclude Mr. Berg's inherency opinion.**

Mr. Berg opined in his report that a "lower doping concentration" at the angled sidewalls "than the flat bottom area of the trench … is inherent in how 0° doping interacts with a slanted trench as shown in the '384 publication." *See* Dkt. No. 165-2 ¶ 72. Force MOS seeks to exclude this conclusion because Mr. Berg later stated he was "not aware" "that inherency may not be established merely by probabilities or possibilities," and Force MOS argues that he consequently applied the wrong legal standard.

Specifically, Force MOS argues that inherency does not exist where there is any possibility (even a suboptimal one) of practicing the prior art in a different way. *See In re Rijckaert*, 9 F.3d 1531, 1534 (Fed. Cir. 1993). And Mr. Berg stated in his deposition that, in addition to teaching what he opined was "inherent," there exists at least one other possible way of practicing the patent that is "not prohibited" by the '384 patent: performing ion implantation until the dopant in both the bottom and sidewalls reaches the solubility limit, such that they have the same doping concentration. *See* Dkt. No. 165-5 at 80. Force MOS therefore insists that Mr. Berg's inherency analysis is legally erroneous.

While Mr. Berg may not have articulated the applicable legal standard in perfect terms, he nevertheless appears to have applied it. His report noted that it "would be *impossible*" to view the '384 publication as teaching a "uniform doping concentration." *See* Dkt. No. 165-2 ¶ 73 (emphasis added). Further, his deposition testimony suggests at least some understanding of the correct

standard: Mr. Berg stated that he understood inherency to require that "the element necessarily was there, … even though it might not be explicit, if it's inherently there without the explanation, it's still there." *See* Dkt. No. 165-5 at 74. Though he conceded that one alternative possibility was "not prohibited"—i.e., achieving uniform doping concentrations by doping to the solubility limit—he explained that such an approach would result in "damage" requiring "a higher temperature" to "anneal that out" and would also "potentially result[] in higher threshold voltages, which is absolutely what you do not want in power MOSFETs." *Id.* at 80–81. As AOS argues, that testimony suggests the uniform doping concentration alternative might not be operable, such that it would not defeat Mr. Berg's inherency opinion.

Because Mr. Berg's inherency opinion is not clearly legally erroneous on its face, outright exclusion is not necessary. Force MOS may instead attack the opinion through cross-examination at trial.

**d. Mr. Berg sufficiently explained his obviousness opinions.**

Force MOS seeks to exclude Mr. Berg's opinions that the asserted patents are obvious, arguing that Mr. Berg failed to examine whether a person of skill in the art would have had a reasonable expectation of success when combining the teachings of the prior art. *See Amgen Inc. v. F. Hoffman-La Roche, Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009). This request is denied. Force MOS complains that "there is no mention of 'reasonable expectation of success' in … Mr. Berg's invalidity report" and that he fails to expressly speak of a POSA's motivations to combine the prior art's teachings. But Force MOS cites no authority imposing a magic-words requirement, and Mr. Berg's report repeatedly opines that certain combinations would have been obvious because the use of those elements in combination was "typical," *see, e.g.*, Dkt. No. 165-2 ¶¶ 84–85, or "a known method," *id.* ¶ 323. Those opinions are, in substance, an assertion that a POSA would have a reasonable expectation of success.

**e. Mr. Berg sufficiently identified combinations that render the '346 patent obvious and a POSA's motivations for making them.**

Force MOS moves to exclude Mr. Berg's opinions concerning the obviousness of the '346 patent on the basis that he failed to identify any specific prior art combinations or a POSA's

motivations for making such combinations. Not so.

In discussing the obviousness of the ’346 patent, Mr. Berg grouped the prior art into three categories, with each category containing all the prior art that he asserted disclosed a particular characteristic (or set of characteristics) of the ’346 patent. Then, Mr. Berg opined that combining one reference from each category, no matter the particular reference, would disclose the ’346 patent. (Because some prior art fell into more than one category, Mr. Berg also opined that certain combinations of only two references could also render the ’346 patent obvious.) *See* Dkt. No. 165-2 ¶¶ 353–83. Mr. Berg showed the potential combinations through charts, and he opined that a person of ordinary skill in the art would have been motivated to combine prior art from each category. *See id.* ¶¶ 384–92.

Force MOS makes a half-hearted effort to argue that Mr. Berg failed to identify specific prior art combinations. Yet the problem, in Force MOS’s eyes, is clearly that Mr. Berg identified too many specific combinations. *See* Dkt. No. 165 at 18 (lamenting that “Mr. Berg’s report purports to offer up to 20 combinations for claim 1 of the ’346 patent alone”). Force MOS identifies no authority for the proposition that an expert’s testimony should be excluded for identifying a large, but bounded, number of specific prior art combinations that might render an asserted patent obvious. Force MOS relies on *GCP Applied Technologies, Inc. v. AVM Industries, Inc.*, No. 19-CV-07475, 2022 WL 17081176, at *14 (C.D. Cal. Aug. 5, 2022). That case is inapposite. There, a defendant moved for summary judgment on its obviousness defense based on an expert report that “disclosed 16 different prior art references” without explaining how those references should be combined, yielding “literally more than a trillion possible combinations.” *Id.* The court denied the motion, reasoning that “[i]t would be unfair and unrealistic for GCP’s expert to opine on the deficiency of more than a trillion prior art combinations.” *Id.* That an expert report offering virtually boundless prior art combinations is insufficient to conclusively establish obviousness for summary-judgment purposes does not suggest that expert testimony proposing a few dozen specific combinations is inadmissible at trial.

Force MOS also contends that Mr. Berg failed to provide a sufficient basis for his opinion that a POSA would have been motivated to make all of these combinations. As Force MOS notes,

United States District Court
Northern District of California

Mr. Berg's motivation-to-combine analysis referred generally to the three categories of prior art, without discussing particular combinations of individual references. *See id.* ¶¶ 380–382, 384–392. But Force MOS fails to explain why Mr. Berg would need to provide a separate motivation-to-combine analysis for each proposed combination. If multiple references each disclose the same characteristic, a POSA's motivation to combine each such reference with other prior art would logically be the same. None of the authorities to which Force MOS points are to the contrary—all involve a failure to explain how *any* combination met the asserted claims, which is not the case here. *See Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (affirming exclusion of expert testimony where the expert "merely list[ed] a number of prior art references" without "stat[ing] how or why a person ordinarily skilled in the art would have found the claims of the [asserted] patent obvious in light of some combination" thereof); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (affirming exclusion of testimony where "[t]he expert failed to explain how specific references could be combined … or how any specific combination would operate or read on the asserted claims"); *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017) (vacating and remanding agency obviousness determination where the agency "nowhere clearly explained, or cited evidence showing, *how* the combination of the two references was supposed to work").

Force MOS's request to exclude Mr. Berg's testimony as to the obviousness of the '346 patent is therefore denied.

**3. Allegedly Undisclosed Opinions**

Finally, Force MOS asks the Court to preclude Mr. Berg from offering a variety of opinions that Force MOS alleges were not disclosed in his expert report. The opinions broadly fall into two camps: (1) opinions expressed to and relied upon by Dr. Gareth Macartney (AOS's damages expert) in interviews and (2) opinions expressed in response to questions from Force MOS's counsel at Mr. Berg's deposition.

The Court grants Force MOS's request to preclude Mr. Berg from offering opinions at trial that he expressed only to Dr. Macartney and did not disclose in his report. It is well established that experts may not provide testimony outside the scope of their expert reports. *See Nationwide*

*Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1062 (9th Cir. 2008).

The Court denies Force MOS's categorical request to exclude the opinions Mr. Berg provided at his deposition in response to Force MOS's questions. Whether Mr. Berg intends to offer any of these opinions at trial is unclear and may depend on the questions posed by Force MOS on cross examination. The Court will not rule on speculative evidentiary disputes. *See Sedano v. United States*, No. 1:14-CV-142, 2016 WL 524734, at *2 (E.D. Cal. Feb. 10, 2016) ("[I]t is not necessary to preclude evidence that the Government does not intend to admit."). To the extent Mr. Berg's testimony at trial strays outside the scope of his expert reports, Force MOS may object at that time.

**C. Force MOS's motion to exclude Dr. Macartney's testimony is granted.**

Force MOS also moves to strike and exclude the testimony of AOS's damages expert Gareth Macartney, Ph.D., on several grounds. The motion is granted.

**1. Reliance on Past Agreements**

Force MOS seeks to exclude Dr. Macartney's opinions relying on three past license or patent-acquisition agreements concerning technologies other than the asserted patents in order to determine the royalty rate that would result from a hypothetical negotiation for a license in this case. The Court has already granted Force MOS's motion to strike AOS's expert reports to the extent they rely on the first agreement due to AOS's failure to identify it as a comparable agreement during fact discovery. *See Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, No. 22-CV-05448-PCP, 2026 WL 984238, at *10 (N.D. Cal. Apr. 13, 2026). And the Court agrees that Dr. Macartney's reliance on the other two agreements is unreliable.

As to the second agreement, Dr. Macartney relied on it to provide his "starting point" or "baseline royalty rate" for his opinion as to a reasonable royalty for the asserted patents in this case. *See* Dkt. No. 163-2 ¶¶ 57, 62, 64. Yet Dr. Macartney himself opined that the second agreement is "not comparable to the agreement in the hypothetical negotiation" at issue here. *Id.* ¶ 28. "When relying on [past] licenses to prove a reasonable royalty," even "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). So where an expert

"affirmatively reject[s] … licenses as non-comparable," royalty opinions based on those licenses "cannot be admitted into evidence or used in any way to determine a royalty rate." *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *5 (N.D. Cal. Jan. 23, 2015); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (excluding reasonable-royalty analysis where an expert "improperly relie[d] on a license … that he himself admit[ted] is 'not a comparable license …' to establish a floor for a reasonable royalty"). Dr. Macartney's reliance on the concededly non-comparable second agreement to set his baseline is therefore unreliable and shall be excluded.

Dr. Macartney's reliance on the third agreement is unreliable for similar reasons. As the Federal Circuit has explained, prior agreements "need to be sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for" if such agreements are to be used to determine a reasonable royalty rate. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021) (quoting *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019)). Such an accounting requires an expert to do more than "alleg[e] a loose or vague comparability between different technologies or licenses." *LaserDynamics*, 694 F.3d at 79. Thus, where an expert "provide[s] no evidence or explanation for how the … royalty rate he derive[s] from [a past] agreement accounts for" differences between that agreement and the hypothetical agreement in the instant case, the expert's royalty opinion relying on the past agreement is properly excluded. *MCL Intell. Prop.*, 10 F.4th at 1375. That is the case here. Dr. Macartney relied on the third agreement to inform his royalty opinion yet "conducted no assessment of the licensed technology versus the accused technology to account for any differences." *Id.* Nor did Mr. Berg—on whose technical opinion Dr. Macartney relied—conduct any technical comparability analysis with respect to the third agreement that might have obviated the need for Dr. Macartney to do so. *See* Dkt. No. 163-4 at 64–66 (Dr. Macartney conceding that Mr. Berg's report contained no express comparison); Dkt. No. 163-5 at 295–95 (Mr. Berg conceding the same). And while Dr. Macartney's report relied on an AOS employee's assertion that that the third agreement "covers technology that is most comparable, in terms of relative importance and value, to the [asserted patents]," Dkt. No. 163-2 ¶ 36, that

conclusory assertion falls far short of the requisite comparability analysis, which "requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–73 (Fed. Cir. 2020); *see also Entangled Media, LLC v. Dropbox Inc.*, No. 23-CV-03264-PCP, 2025 WL 3240878, at *5 (N.D. Cal. Nov. 20, 2025) ("An expert who relies on comparable licenses must account for 'the technological and economic differences between them.'" (quoting *Wordtech Sys., Inc v. Integrated Networks Sols.*, Inc., 609 F.3d 1308, 1320 (Fed. Cir. 2010))).

AOS's contrary arguments fail. It contends that the "degree of comparability" of a past agreement is a factual issue best decided by the jury at trial, not through exclusion of expert testimony. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *see also Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1041 (Fed. Cir. 2020). But that is true only where an expert's "opinions permit the jury to properly evaluate the differences between the previous and the hypothetical licenses." *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2022 WL 21306657, at *33 (N.D. Cal. Oct. 4, 2022). In other words, "the degree of comparability is appropriately left for the jury to decide" only if an expert has first "made a showing of baseline comparability." *Palantir Techs. Inc. v. Abramowitz*, No. 19-cv-06879-BLF, 2022 WL 22913842, at *11 (N.D. Cal. Nov. 3, 2022); *see also Bio-Rad*, 967 F.3d at 1374. Because Dr. Macartney's report fails to conduct any meaningful comparability analysis as to either the second or third agreement, it provides no basis for the jury to evaluate the differences between those agreements and the hypothetical negotiation in this case—that is, it fails to show even baseline comparability. Indeed, as to the second agreement, Dr. Macartney expressly disavows any claim of comparability.

AOS next contends that Dr. Macartney must be permitted to rely on the second agreement to rebut the opinions of Force MOS's own damages expert, who relied on the agreement. "But merely because [Dr. Macartney's] testimony is offered in rebuttal to another expert's testimony does not mean the testimony is admissible. Expert opinions in rebuttal are subject to the same requirements as any other expert opinions." *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST,

United States District Court
Northern District of California

2021 WL 11701485, at *2 n.1 (N.D. Cal. Nov. 29, 2021). As just discussed, Dr. Macartney's reliance on the second agreement for royalty purposes is unreliable due to his opinion that the second agreement is not comparable. AOS cites no authority for the proposition that Dr. Macartney may rely on an agreement he expressly deemed non-comparable as the "baseline" for his royalty opinion simply because an opposing expert relied on the agreement. To the extent AOS takes issue with the reliance of Force MOS's expert on the second agreement, the appropriate course was to move to exclude the testimony of Force MOS's expert. AOS chose not to do so.

AOS also argues that it uses certain of the past agreements only "as data points regarding patents on minor improvements." But Federal Circuit precedent "leaves no room for some sort of soft or 'suggestive' reliance" on agreements for which an expert has not provided a basis to find comparability. *Open Text S.A.*, 2015 WL 349197, at *5.

Accordingly, the Court grants Force MOS's motion to strike from Dr. Macartney's report any opinions relying on the three past agreements to determine a reasonable royalty rate. Testimony based on such opinions shall be excluded at trial. For the avoidance of doubt, nothing in this order precludes Dr. Macartney from discussing the second agreement at trial in order to explain his opinion that the agreement is not comparable and thereby rebut the royalty opinion of Force MOS's expert.

**2. Apportionment**

Force MOS seeks to strike and exclude Dr. Macartney's apportionment opinions. This request is also granted.

"[W]here multi-component products are involved," the Federal Circuit has held "that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). So when accused products "have both patented and unpatented features," a proper royalty analysis requires "a determination of the value added by such features" so that the jury may "apportion the [alleged infringer]'s profits and the patentee's damages between the patented feature and unpatented features using reliable and tangible evidence." *Id.* (citation modified). An expert "[l]ogically … could do this in various ways," but "[t]he essential

requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.*

Here, Dr. Macartney recognized that "[a] sound apportionment analysis must focus on those limited areas actually improved" and criticized Force MOS's expert for overstating the numerical value added by the allegedly patented features of the accused products. *See* Dkt. No. 163-2 ¶¶ 44–48. Yet in reaching his own apportionment opinion, Dr. Macartney offered no contrary view as to the numerical value of the accused products' allegedly patented features. Instead, relying on Mr. Berg and an AOS employee's views that the asserted patents are "'very specific' to small features and have only a 'small impact' on performance," and "are not significant drivers of lower resistance, higher density, or lower cost, Dr. Macartney "f[ou]nd that the incremental value to AOS of the patented technology is low." *Id.* ¶¶ 66–67. Dr. Macartney therefore "ascribe[d] downward pressure" to the royalty rate. *Id.* ¶ 67.

The Federal Circuit has rejected the use of "vague qualitative notions of the relative importance of" a product's patented features as the basis for an apportionment analysis. *See LaserDynamics*, 694 F.3d at 69. That is true even where an expert uses such qualitative views to provide a specific numerical estimate of a patented technology's value-add. *See id.*; *see also NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020). Dr. Macartney not only relies on the vague qualitative notion that the incremental value of Force MOS's patented technology is "low"—he also makes no attempt to translate that notion into a numerical figure that could provide a "reliable" and "tangible" basis for the jury to apportion AOS's profits between the accused products' patented and unpatented features. *See Ericsson*, 773 F.3d at 1226. Dr. Macartney's general ascription of "downward pressure" does not suffice. *See GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014) (excluding an expert's apportionment opinion that was based on "broad statements about the general value of" the patented technology and "advance[d] no reasoned basis" or "mathematical calculation" to support the expert's ultimate royalty opinion).

AOS insists that Dr. Macartney's apportionment opinion is admissible because, as the Federal Circuit has explained, apportionment analyses do not require "absolute precision" and

may entail "some degree of approximation and uncertainty." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014). But the fact that "the Federal Circuit allows for some approximation in the reasonable royalty context … does not negate the Federal Circuit's requirement of sound economic and factual predicates for that analysis." *NetFuel*, 2020 WL 1274985, at *7 (citation modified). Here, the only such predicates AOS identifies for Dr. Macartney's apportionment analysis are the past agreement discussed above. To be sure, comparable agreements may in some cases supply a valid basis for an apportionment analysis. *See Bio-Rad*, 967 F.3d at 1376 (explaining that "quantitative apportionment" may not be required where a royalty opinion is instead based on the royalty rate in a comparable license agreement with "built-in apportionment"). But for the reasons already discussed, Dr. Macartney's reliance on the past agreements is unreliable and must be excluded, so it cannot provide a reliable basis for his apportionment analysis. In any event, Dr. Macartney did not rely on any of the past agreements for his apportionment opinion—the relevant section of his report makes no mention of those agreements.

Force MOS's request to strike and exclude Dr. Macartney's apportionment opinion is therefore granted.

### 3. Noninfringing Alternatives

Force MOS argues that Dr. Macartney's royalty opinions relying on the existence of NIAs should be excluded both because AOS failed to sufficiently disclose the purported NIAs in discovery and because Dr. Macartney's opinions as to the NIAs are unreliable. Although Force MOS is correct that AOS failed to disclose the NIAs as required by the Patent Local Rules, the Court has already determined that such failure was harmless and therefore rejected Force MOS's request to exclude Dr. Macartney's testimony on that basis. *See & Omega Semiconductor*, 2026 WL 984238, at *10–12. But because Dr. Macartney's opinions concerning NIAs lack a reliable basis, the Court grants the request to exclude his testimony.

As explained above, a proposed NIA to the patented technology reduces the royalty rate that would result from a hypothetical negotiation only if that proposed NIA could have been available to the infringer at the time of the hypothetical negotiation. *See Masimo Corp. v. Apple*

United States District Court
Northern District of California

*Inc.*, No. 20-CV-48, 2025 WL 3190897, at *8 (C.D. Cal. Oct. 17, 2025) ("[I]n the reasonable royalty context, courts typically require some showing that the alternative at least could have been available at the time of the hypothetical negotiation"), *reconsideration denied*, No. 20-CV-48, 2025 WL 3190877 (C.D. Cal. Oct. 28, 2025); *see also i4i Ltd. P'ship*, 598 F.3d at 854 (affirming admissibility of expert testimony that a defendant who "had no commercially acceptable, non-infringing alternatives to using [the plaintiff's] patent" would pay an increased royalty in a hypothetical negotiation). Thus, while an expert is not required to address NIAs in a reasonable-royalty analysis, *see Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 9038509, at *10–11 (N.D. Cal. Apr. 27, 2021), an expert who chooses to opine that NIAs reduce the appropriate royalty rate must provide some basis for the jury to assess whether such NIAs could have been available to the alleged infringer.

Dr. Macartney opined in his report that "the alleged advantages of the [asserted patents] … can be achieved from numerous technologies and processes unrelated to the patented technology," and that the existence of such NIAs exerts "downward pressure" on the appropriate royalty rate in this case. Dkt. No. 163-2 ¶ 75. As Dr. Macartney acknowledged in both his report and deposition, however, he did "not express[] [his] own technical opinion on non-infringing alternatives" and instead relied on the views of Mr. Berg and two AOS employees as to the existence of NIAs. Dkt. No. 163-4, at 111–12; *see also* Dkt. No. 163-2 ¶¶ 73–74. But as already discussed, Mr. Berg nowhere considered the availability of the purported NIAs he discussed in his report. And if the AOS employees on whom Dr. Macartney relied considered the availability of the proposed NIAs, that is not apparent from Dr. Macartey's report: The report merely recounts their reasoning as to why the proposed NIAs would be acceptable substitutes, not the NIAs' availability. *See* Dkt. No. 163-2 ¶ 74. Dr. Macartney's report therefore provides no reliable methodology for the jury to assess whether the proposed NIAs he discusses could have been available to AOS such that they might reduce the royalty resulting from a hypothetical negotiation.[2]

---

[2] Because the Court grants Force MOS's request on this basis, the Court need not address Force MOS's alternative argument that Dr. Macartney failed to perform a required financial analysis of the proposed NIAs' impact on a reasonable royalty rate.

United States District Court
Northern District of California

Accordingly, the Court grants Force MOS's motion to exclude Dr. Macartney's opinion concerning the purported NIAs.

**4. Overall Royalty Figure**

Force MOS contends that the deficiencies in Dr. Macartney's opinions concerning past agreements, apportionment, and NIAs render his ultimate conclusion as to a reasonable-royalty figure unreliable. Indeed, without the deficient component opinions excluded above, Dr. Macartney's opinion as to a reasonable-royalty figure is little more than *ipse dixit*. The opinion proceeds from the now-excluded "baseline," based on a concededly non-comparable agreement, and is premised in large part on the "downward pressure" exerted by Dr. Macartney's now-excluded opinions concerning apportionment and NIAs or relying on undisclosed technical opinions. Of course, Dr. Macartney's report contains other opinions about the relevant factors under the framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). But Dr. Macartney merely opines in general terms that these factors warrant "upward" or "downward" adjustments from his impermissible baseline (or are "neutral"), without specifying in any discernible manner how those adjustments bear on his ultimate conclusion as to a specific reasonable-royalty figure, *see* Dkt. No. 163-2 ¶¶ 59–78. As Force MOS argues, an expert opinion is "quintessential *ipse* dixit" where, as here, it "use[s] a dubious royalty base," then opines that certain "*Georgia-Pacific* [f]actor[s] … would suggest some unarticulated quantum of 'higher' [or lower] royalty rate" before landing on a specific royalty range "without explaining at all how it was that the application of any one or all of those factors would permit" the opined royalty range. *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012). AOS does not meaningfully respond to the argument that exclusion of the opinions discussed above leaves Dr. Macartney's ultimate royalty opinion without a sufficiently reliable basis; AOS simply reiterates its already-rejected contentions as to the admissibility of Dr. Macartney's component opinions.

"Because the link, if any, between th[e] inputs" the Court has not excluded "and [Dr. Macartney]'s final royalty is written in invisible ink," "[e]xclusion is required." *Open Text S.A.*, 2015 WL 349197, at *6; *see also Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("[N]othing

in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Force MOS's request to exclude Dr. Macartney's ultimate royalty figure is granted.

**5. Reliance on Undisclosed Technical Opinions**

Finally, Force MOS moves to exclude Dr. Macartney's opinions relying on technical opinions provided by Mr. Berg and two AOS employees that were not disclosed in any technical expert report.

The Court grants Force MOS's request as to Dr. Macartney's reliance on opinions from Mr. Berg that were not disclosed in Mr. Berg's report. "[I]n forming an opinion, one expert may rely on opinions or analyses of … another." *Sound View Innovations, LLC v. Hulu, LLC*, No. 17-CV-04146, 2019 WL 9047211, at *14 (C.D. Cal. Nov. 18, 2019), *aff'd*, 33 F.4th 1326 (Fed. Cir. 2022). But "to the extent [a damages expert] relies on technical analysis" by another expert, "those opinions must be separately disclosed by [the] technical expert." *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 3870256, at *7 (N.D. Cal. Aug. 6, 2014). That is because "[t]he reliability of the opinions of that other [technical] expert can be tested in a direct challenge to them," but "without a disclosure of those opinions and their basis, such a direct challenge cannot be made." *Sound View Innovations*, 2019 WL 9047211, at *14. Allowing a technical expert to use a damages expert as a mouthpiece for opinions never articulated in the technical expert's own report would also skirt Federal Rule of Civil Procedure 26's requirement that each expert's report contain "a complete statement of all opinions the [expert] will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). "Because [Dr. Macartney] cannot rely on the undisclosed opinion of another expert to support his analysis," his technical opinions reflecting undisclosed conversations with Mr. Berg are excluded. *Sound View Innovations*, 2019 WL 9047211, at *14.

For similar reasons, the Court also grants Force MOS's request to exclude Dr. Macartney's opinions relying on the technical opinions of two AOS employees who are not offered as technical experts in this case. As AOS notes, "damages experts must necessarily incorporate some level of technical understanding to perform their analyses," so lay witnesses with personal knowledge of an alleged infringer's inner workings may supply "factual context about [the alleged infringer]'s

United States District Court
Northern District of California

technology or business operations." For example, in reaching an opinion about the existence of NIAs and their impact on a reasonable royalty rate, a damages expert might consider lay witnesses' insights that possible alternatives "exist and … are currently in use" by an alleged infringer, *see Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346, 365 (2024), or their "opinions … with respect to the feasibility of implementing certain" known alternatives, *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 116 (D. Del. 2016). That kind of factual testimony is "rationally based on the [lay] witness's perception" and is therefore proper under Federal Rule of Evidence 701. But Force MOS challenges Dr. Macartney's reliance on opinions of an entirely different sort: technical conclusions by AOS employees about the comparability of AOS's past licenses to the hypothetical negotiation in this case and the significance of the asserted patents' improvements over prior art.[3] *See* Dkt. No. 163-2 ¶¶ 23–24, 28, 36, 46, 62, 66–67. These opinions are "testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702" and are thus subject to "the corresponding disclosure requirements of" Federal Rule of Civil Procedure 26. *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 2:13-cv-07228, 2015 WL 774046, at *2 (C.D. Cal. Feb. 24, 2015); *see also Qualcomm Inc. v. Apple Inc.*, No. 17-CV-02398, 2018 WL 5829940, at *2 (S.D. Cal. Nov. 7, 2018) ("Whether a particular patent license is comparable to one that might be taken in a hypothetical negotiation is … a matter of expert opinion"); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, No. 02-CV-03378-EDL, 2007 WL 607792, at *3 (N.D. Cal. Feb. 23, 2007) (noting that analysis of "prior art in [an] advanced technological field" is "normally … the subject of expert opinion"). Because the AOS employees were not disclosed as expert witnesses and thus did not provide reports disclosing their technical opinions, Dr. Macartney is precluded from relying on those technical opinions. *Cf. Sound View Innovations*, 2019 WL 9047211, at *14.

Accordingly, Force MOS's motion to strike and exclude portions of Dr. Macartney's expert report and testimony is granted in full.

---

[3] Force MOS also challenges Dr. Macartney's reliance on the AOS employees' opinions concerning NIAs. Because the Court grants Force MOS's motion to exclude Dr. Macartney's opinions concerning NIAs on other grounds, the Court need not address this challenge.

United States District Court
Northern District of California

**III. Sealing Motions**

In connection with the briefing on their cross-motions for summary judgment and *Daubert* motions, the parties filed several administrative motions to seal. *See* Dkt. Nos. 146, 154, 156, 158, 160, 162, 164, 171, 177, 178, 181, 186, 188, and 192. Pursuant to the Court's orders, Dkt. Nos. 166 and 175, the parties filed two joint motions consolidating their sealing requests. *See* Dkt. Nos. 183 and 194.

In their consolidated motions, the parties abandon their prior sealing requests as to Dkt. Nos. 158-3, 158-4, 158-5, 158-6, 158-7, 158-9, 158-14, 160-4, 164-4, 164-5, 171-3, 171-4, 177-7, 177-8, 177-9, 177-10, 177-12, 178-1, and 181-1. The parties are ordered to file unredacted copies of these documents to the public docket within 14 days of this order.

AOS requests to seal material filed in connection with Force MOS's motion to strike under Federal Rule of Civil Procedure 37(c), Dkt. No. 149. The motion sought to exclude certain opinions of AOS's that relied on evidence and theories that AOS failed to disclose in discovery and experts and to preclude AOS from making arguments at trial based on those opinions. Because Force MOS's motion concerned discovery matters only tangentially related to the merits and the parties' summary-judgment briefing, the "good cause" standard applies to the parties' requests to seal exhibits filed in connection with the motion. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097, 1100 (9th Cir. 2016); *see also Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-CV-07160-JST, 2019 WL 13423737, at *2 (N.D. Cal. Jan. 30, 2019) (applying the good-cause standard to a "sealing motion related to [a] motion to strike"). AOS has demonstrated that good cause exists to redact or seal information in these documents, the disclosure of which would reveal sensitive information about AOS's confidential licensing agreements, finances, sales, and manufacturing processes to competitors. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-CV-3724, 2014 WL 7387206, at *1 (N.D. Cal. Dec. 19, 2014); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 12-CV-1971, 2014 WL 6986068, at *1 (N.D. Cal. Dec. 10, 2014). Accordingly, the Court grants AOS's sealings requests as to these documents. *See* Dkt. No. 183 at 2–5 (listing the documents and the portions to be sealed).

AOS, Force MOS, and third parties Microtech and MSS also request to redact certain

materials filed in connection with the parties' *Daubert* motions. Contrary to the parties' assertions, the "compelling reasons" standard applies to these requests. *See Ctr. for Auto Safety*, 809 F.3d at 1100 (9th Cir. 2016) (explaining that *Daubert* motions pertaining to issues bearing on summary-judgment motions are subject to that heightened standard). Under this "stringent standard," a party seeking to seal judicial records must demonstrate "a compelling reason" for sealing that outweighs "the competing interests of the public." *Id.* at 1096–97. Demonstrating compelling reasons requires a specific explanation, support by a factual showing, of the need for sealing and the injury that will otherwise result. *See id.*; Civ. L.R. 79–5(c)(1), (f)(3).

The parties have satisfied the compelling-reasons standard only with respect to the following documents they seek to redact from the briefing and exhibits filed in connection with the *Daubert* motions: Dkt. Nos. 160-2, 160-3, 160-5, 160-6, 160-7, 160-8, 177-1, 177-2, 177-3, 177-4, 177-5, 177-6, 177-11, 177-13, 177-14, 192-1. The parties' proposed redactions to these documents narrowly protect competitively sensitive information—like the confidential chemical composition of Microtech and MSS's junction-staining etch solutions and the exact dollar amounts of AOS's intellectual-property royalties—and the parties have explained that disclosure of such information would harm their business interests. *See Ctr. for Auto Safety*, 809 F.3d at 1097 (explaining that compelling reasons may exist to seal "sources of business information that might harm a litigant's competitive standing"). But AOS's requests as to the remaining documents submitted in connection with the *Daubert* motions cover an excessive amount of material.[4] *See* Dkt. No. 162-2, 162-3, 162-4, 162-5, 162-6, 162-7, 164-2, 164-3, 164-6, 164-7, 177-11, 177-15, 178-2, 181-2, 186-1, and 188-1. Even assuming that compelling reasons exist to seal some of this material, a sealing request must be "narrowly tailored to seal only the sealable material[.]" Civ. L.R. 79–5(c)(3). AOS's requests are "overly broad"—for example, proposing to redact the name of a patent-acquisition agreement already disclosed elsewhere in the record or to redact entire sentences or paragraphs instead of the few words disclosing sensitive information—and are denied

---

[4] Force MOS's narrow requests to disclose product-specific financial data from Dkt. Nos. 162-3, 164-7, 178-2, and 181-2, and Microtech's requests to redact information concerning its junction-staining etch solution from Dkt. Nos. 177-15, are supported by compelling reasons and are granted.

United States District Court
Northern District of California

without prejudice on that basis. Civ. L. R. 79-5(f)(6). AOS may submit a revised sealing motion with respect to these documents within 30 days of this Order. Failure to limit proposed redactions to genuinely sensitive information will result in denial of AOS's revised motion in full.

Finally, Force MOS and AOS each seek to redact material from documents filed in connection with their cross-motions for summary judgment. The "compelling reasons" standard applies. *See Ctr. for Auto Safety*, 809 F.3d at 1098. Force MOS has demonstrated that compelling reasons exist for its proposed redactions to Dkt. Nos. 158-2, 158-8, 158-11, 158-12, 158-13, and 158-15, which narrowly cover confidential details of Force MOS's contracts with its manufacturers, sensitive financial data like the pricing information and profit margins for particular products, details about which Force MOS products practice the asserted patents, and the names of Force MOS customers. As Force MOS has explained, disclosure of such information would enable its competitors to poach customers, undercut Force MOS's prices, and copy Force MOS's product designs and manufacturing strategies. *See id.* at 1097 (noting that such harms supply compelling reasons to seal). The Court therefore grants these requests. Similarly, AOS's narrow proposal to redact Dkt. No. 171-2 to protect confidential details of the materials and processes used in manufacturing its products, disclosure of which would enable competitors to copy AOS's strategies, is supported by compelling reasons and is granted. But Force MOS's request to redact almost the entirety of Dkt. No. 158-10, a contract with one of its manufacturers, is denied without prejudice due to overbreadth. Force MOS argues that sealing is necessary to protect confidential information about its pricing decisions. But the proposed redactions cover contractual provisions that do not relate in any way to pricing or other matters of an apparently sensitive nature—for example, Force MOS seeks to redact boilerplate provisions about severability and amendments to the contract. Force MOS may file a revised motion to seal Dkt. No. 158-10 within 30 days of this Order. Failure to narrow the proposed redactions to genuinely sensitive material may result in denial of the revised motion and the disclosure of the document in full.

## IV. Conclusion

For the foregoing reasons, Force MOS's motion to realign the parties (Dkt. No. 196) is

United States District Court
Northern District of California

GRANTED; AOS's motion to strike and exclude the testimony of Dr. Neikirk (Dkt. No. 161) is DENIED; Force MOS's motion to strike and exclude the testimony of Mr. Berg (Dkt. No. 165) is GRANTED in part and DENIED in part; Force MOS's motion to strike and exclude the testimony of Dr. Macartney (Dkt. No. 163) is GRANTED; the parties' consolidated sealing motions (Dkt. Nos. 183 and 194) are GRANTED in part and DENIED in part; and the parties' remaining sealing motions (Dkt. Nos. 146, 154, 156, 158, 160, 162, 164, 171, 177, 178, 181, 186, 188, and 192) are DENIED as moot.

**IT IS SO ORDERED.**

Dated: July 27, 2026

P. Casey Pitts
United States District Judge